# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                           )
                           )    Def. I.D. # 2311003172
      v.                   )
                           )
                           )
FIDEL CHAMORRO RAMIREZ,     )
                           )
      Defendant.           )

Submitted: February 14, 2025
Decided: February 17, 2025

*Upon Defendant's Motion for a New Trial*

**GRANTED**

**MEMORANDUM OPINION AND ORDER**

Mary E. Batten, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

James P. Murray, Esquire, Assistant Public Defender, 14 The Circle, Georgetown, DE 19947; Attorney for Defendant.

**KARSNITZ, R. J.**

## INTRODUCTION

Jury trials and jury verdicts are the soul of the criminal justice system, and what we do. We rely upon the judgment of twelve citizens we pull from their homes and jobs to serve the community as jurors. We want and get their collective judgment. Since I have been on the Bench, I have observed these citizens perform their duties carefully and contemplatively. Their service is, in my opinion, the most important part of our justice system. I review their work with great deference, and only with great reluctance do I consider interfering with their decision. The Motion for New Trial (the "Motion") in this case asks me to review and set aside a jury verdict.

## PROCEDURAL BACKGROUND

On November 6, 2023, an investigation began into an allegation that Fidel Chamorro Ramirez ("Defendant") committed sexual assault. Police subsequently arrested him and charged him with one count of Rape Second Degree.[1] On December 9, 2024, Defendant's two-day jury trial began. During *voir dire*, the members of the jury panel were not questioned about their ability to be fair and impartial jurors despite a witness's or Defendant's immigration status, and despite the fact that a witness or Defendant only spoke Spanish. The trial concluded on December

---

[1] Under 11 *Del. Code Ann.* § 772 (a)(l).

10, 2024. The jury deliberated for less than ten minutes and returned a verdict of guilty. Sentencing was scheduled for February 7, 2025. Given Defendant's Motion, this date has been postponed.

The State's case in chief consisted of testimony from five (5) witnesses: the victim, the victim's mother, the victim's stepfather (who is also Defendant's uncle), and Delaware State Troopers Riley Parker and Derek Adams. The trial required Spanish interpretation for Defendant and two of the State's witnesses, the victim's mother and the victim's stepfather. The victim did not require Spanish interpretation. Defendant testified on his own behalf.

There was no expert witness testimony during trial. There was no physical or other forensic evidence of the rape. Thus, the jury's decision relied on the credibility of these witnesses.

On December 17, 2024, Defendant filed the Motion.[2] On January 20, 2025, the State filed its Response to the Motion. On February 14, 2025, I heard oral argument on the Motion. This is my ruling on the Motion.

## TESTIMONIAL EVIDENCE

Defendant and the victim lived in the same household on the date of the incident. The victim testified that on June 1, 2023, Defendant pulled her into

---

[2] Under Super. Ct. Crim. R. 33.

his bedroom, removed his clothing, removed her clothing, and they had sexual intercourse. The victim was 12 years and several months old and Defendant was 18 years old.

The victim's mother and stepfather testified that there were distinct changes in the victim's behavior after June 1, 2023. The victim stopped coming out of her room, interacting with her family, and generally was staying to herself more and did not want to be around Defendant. Specifically, the victim's stepfather testified that the victim became more "serious" and would no longer greet him when he came home from work. Defendant apologized to the stepfather, but did not say for what he was apologizing. These apologies happened during the workday, as the Defendant and the victim's stepfather worked together.

More than five months after the incident, on November 6, 2023, the victim's mother testified that Defendant told her in her car that he had something very important to tell her about things he had done, but he never told her what it was; rather, he indicated she would soon find out. That same day the victim told her mother and the Delaware State Police that she had been raped by Defendant on June 1, 2023.

State Troopers Parker and Adams came to the victim's residence. Trooper Parker met with the victim and Trooper Adams stood outside the victim's residence with Defendant. Defendant, who speaks Spanish, was asking questions of

4

Trooper Adams by using an application on his cell phone that would translate Spanish into English. On direct examination by the State, Trooper Adams testified as follows:

> So I was just standing by, but he was attempting to ask me some questions. Or one of the things he was saying was he kept saying numbers like five, ten, maybe 15, but it was a couple numbers. And then he kept asking like deportation and – [3]

I immediately interrupted and held a sidebar out of the hearing of the jury, during which I stated:

> I don't want anything about deportation. I think that brings in issues of all sorts of things. I am concerned that it was even testified to at this point in time. I'm going to strike that part of that answer, and I'm going to move on from there.[4]

I then struck the last sentence of that answer.

During direct examination of the victim's stepfather by the State, he testified that Defendant was a liar.[5] Again, I immediately interrupted and advised the jury that it was to disregard that testimony.

During recross-examination of the victim's stepfather by defense counsel, he was asked what issues he had with Defendant. He testified as follows:

---

[3] Excerpt Transcript of Trial, Volume A, page 6, lines 19-24.

[4] *Id.*, page 7, lines 6-11.

[5] Although this testimony is not in the Transcript of Trial, at oral argument both counsel stipulated that they clearly recall it, as do I. It may have been lost in the cacophony of the witness, the interpreter, counsel, and me talking over each other.

> [T]hey were because I was like – I would give him advice because he was like using drugs – a lot.[6]

I immediately interrupted and struck that testimony.

After the conclusion of evidence, I conferred with counsel out of the hearing of the jury. I offered them three options on how to deal with these three statements moving forward: (1) do nothing so as not to draw more attention to them; (2) give a limiting or cautionary jury instruction as to the testimony that was ordered stricken; or (3) move for a mistrial.[7] Defense counsel consulted with Defendant and advised him of these three options. Defendant elected to continue with the trial and opted for the limiting or cautionary jury instruction, which instruction I gave to the jury before they retired to consider their verdict.

## LEGAL STANDARD

Under Superior Court Criminal Rule 33, the Court may grant a new trial "if required in the interest of justice."[8] "A new trial is appropriate 'only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice.'"[9] Because the trial court is in the best position to measure the risk of prejudice from events at

---

[6] Excerpt Transcript of Trial, Volume B, page 21, lines 10-14.
[7] I did not indicate whether I would grant a motion for a mistrial, only that I would entertain such a motion.
[8] Super. Ct. Crim. R. 33.
[9] *State v. Bailey*, 2020 WL 1316838, at *2 (Del. Super. Ct. Mar. 16, 2020) (quoting *State v. Johnson*, 2018 WL 3725748, at *2 (Del. Super. Ct. July 25, 2018)).

trial, I have very broad discretion in determining whether to grant a new trial in the interest of justice.[10]

## ARGUMENTS

Defendant argues that, even though I ruled the testimony of Trooper Adams (about Defendant's statements about deportation) inadmissible under Delaware Rule of Evidence 401 (Relevance), it was nonetheless so unfairly prejudicial to Defendant that it could not be sanitized by the cautionary and limiting instruction which I gave to the jury. It is quite reasonable to assume that the testimony identified Defendant as an undocumented immigrant, argues Defendant, and given the current political, social, civil, and criminal status of undocumented immigrants in the United States and the State of Delaware at the time of the trial, it is reasonable to assume that Defendant's immigration status may have been a factor in the jury's decision. Thus, even if it were relevant, the testimony should be excluded by considerations of unfair prejudice and confusion of issues with the jury, as proscribed by Delaware Rule of Evidence 403 (Excluding Relevant Evidence for Prejudice, etc.).

Defendant further argues that the victim's stepfather's statements regarding Defendant's veracity and drug use were inadmissible and unfairly

---

[10] *State v. Appiah*, 2019 WL 6647806, at *3 (Del. Super. Ct. Nov. 26, 2019) (citing *Johnson*, 2018 WL 3725748, at *2).

7

prejudiced the jury. The statement on veracity was not properly brought before the jury as required by Delaware Rule of Evidence 608(a) (Witness's Character for Truthfulness or Untruthfulness). Similarly, except for a criminal conviction, Delaware Rule of Evidence 608(b) prohibits the use of extrinsic evidence to prove specific instances of a witness's conduct (such as drug use) to impeach the credibility of a witness, unless on cross-examination the trial judge in his or her discretion determines that they are probative of the witness's character for truthfulness or untruthfulness, which was not the case here. It was made before Defendant testified, and therefore was necessarily made before his character was even put into issue. Both statements, made by Defendant's uncle, a relative, were so unfairly prejudicial that they could not be sanitized by my curative instructions to the jury.

The State argues that a new trial is not required in the interest of justice, and that the error complained of did not result in actual prejudice or so infringe upon Defendant's fundamental right to a fair trial as to raise a presumption of prejudice. I discussed three options with the parties, including a mistrial and two alternatives to a mistrial, but Defendant freely chose not to have a mistrial. The State further argues that my curative instructions to the jury sanitized any risk of real or presumptive prejudice to Defendant.

## ANALYSIS

### Irrelevant and Prejudicial Evidence

The United States Supreme Court recently addressed the issue of the effect of irrelevant and prejudicial testimony and other evidence during trial on jury verdicts in *Andrew v. White*.[11] In that case, an Oklahoma jury convicted the defendant of murdering her husband and sentenced her to death. The State spent significant time at trial introducing evidence about the defendant's sex life and about her failings as a mother and wife, much of which it later conceded was irrelevant. The Oklahoma Court of Criminal Appeals affirmed the conviction and sentence. Although it struggled to find any relevance of this evidence, it found that, even if the evidence was irrelevant, its admission was harmless error.

In a federal *habeas corpus* petition, the defendant unsuccessfully argued in the U.S. District Court that this evidence had been so prejudicial as to violate the Due Process Clause. The Tenth Circuit U.S. Court of Appeals, with one dissent, also rejected the defendant's claim because, it thought, no holding of the U.S Supreme Court established a general rule that the erroneous admission of prejudicial evidence could violate due process.

The Supreme Court reversed, citing *Payne v. Tennessee*[12] and several other

---

[11] 604 U.S. __, __ S. Ct. __, 2025 WL 247502 (January 21, 2025).
[12] 501 U.S. 808, 825 (1991).

Supreme Court cases[13] as such holdings. It vacated the judgment below and remanded the case to the Tenth Circuit for further consideration of the prejudicial effect of the evidence on both the verdict and the sentence. The Court stated that the ultimate question is whether a fair-minded jurist could disagree that the evidence "so infected the trial with unfairness" as to render the resulting conviction or sentence "a denial of due process."[14]

In my view, and using the standard of *Andrew v. White*, I am of the opinion that the statements of Trooper Adams about Defendant's concern about deportation status, and of Defendant's uncle about Defendant's veracity and drug use, so infected the trial with unfairness as to render the resulting conviction a denial of due process.

The current cultural, political, and social discussion raging about undocumented immigrants in the United States and the State of Delaware gives me great pause about the effect of Trooper Adams' statement on the jurors. Immigration status, and even the inability to speak English fluently, are hot button issues. Even as I write this opinion, the media reports of raids by Federal authorities in the Hispanic community within viewing distance of the Sussex County Courthouse abound. In this case, no members of the jury panel were asked about their thoughts, opinions, or feelings regarding immigration status, legal or

---

[13] *Romano v. Oklahoma*, 512 U.S. 1 (1994); *Rideau v. Louisiana*, 373 U.S. 723 (1963).
[14] *Andrew v. White*, 2025 WL 247502, at*5, citing *Romano*.

otherwise, or their ability to be fair and impartial despite Defendant's immigration status.

In my view, the interest of justice requires that I grant a new trial. The errors complained of by Defendant resulted in actual prejudice to Defendant, or, at a minimum, so infringed upon Defendant's fundamental right to a fair trial as to raise a presumption of prejudice against Defendant.

**Length of Jury Deliberations**

An additional issue that troubles me about this case is the relatively short time the jury deliberated before returning its verdict – less than ten minutes. My concern is whether this brief deliberation violated the Due Process Clause of the Delaware and United States Constitutions.

In *Braddy v. State*,[15] the jury deliberated for 35 minutes before returning a guilty verdict on charges of unlawful use of a credit card, felony theft, criminal impersonation, and sixteen counts of second-degree forgery. The Court held that the defendant had not shown that "prejudice is manifestly conceivable" on the record.[16]

In *Moore v. State*,[17] the jury was told the trial would last two days but in fact it lasted four days. The jury deliberated for approximately two hours before returning a guilty verdict on charges of second-degree burglary and second-degree conspiracy.

---

[15] 505 A.2d 1309 (Table) (Del. 1986).
[16] Citing *McCloskey v. State*, 457 A.2d 332, 337 (Del. 1983).
[17] 616 A.2d 1214 (Table) (Del. 1992).

The Court held that "haste or shortness of time taken by a jury in arriving at its verdict has no effect upon the validity of the verdict and a verdict in a criminal case will not be overturned *solely* because of the brevity of the jury's deliberations."[18] [Emphasis added.]

In *Purnell v. State*,[19] the defendant was convicted of second-degree murder, first-degree attempted robbery, second-degree conspiracy, and related firearms charges. A juror informed the trial judge and fellow jurors that he could not continue to serve beyond that day – a Friday -- because of a planned vacation. The judge denied the defendant's motion for a mistrial and instructed the jury not to consider the juror's vacation plans during their deliberations and that they would continue to deliberate through the evening and weekend, if necessary. Later that day the jury returned its verdict. On direct appeal, the defendant argued that the trial judge improperly allowed the jury to rush to judgment to avoid a hung jury. The Court rejected this argument, stating that "[h]aste or shortness of time taken by a jury in arriving at its verdict does not invalidate the verdict."[20]

I am not basing this decision upon the length of time the jury deliberated. I would be remiss, however, if I did not analyze the question in the context of this case. The case was, in my view, a close one. The rape was reported more than five

---

[18] *Id*. at *2, citing 75B Am. Jur.2d *Trial* § 1649 (1992).
[19] 979 A.2d 1102 (Del. 2009).
[20] *Id*. at *1109.

months after it allegedly happened. The State had no forensic evidence common to sexual assault cases. No witness observed the event other than the alleged victim and Defendant. While the victim's parents testified as to the changes they saw in their daughter, and Defendant's suggestive comments, the jury necessarily had to determine the case upon their view of the credibility of the victim and Defendant. It was the jury's right and duty to make the credibility call. The short time alone would never be a reason to set aside a jury verdict. Jury verdicts are, in my view, sacrosanct. But I am perplexed as to how this could reasonably have been accomplished in less than ten minutes.

**Conclusion**

In my view, although the length of the jury deliberations in this case is not in and of itself dispositive, when coupled with the two irrelevant and prejudicial statements made at trial, and given the wide discretion afforded me in determining whether to order a new trial, the cumulative effect is that the verdict is tainted.

I am not unaware of the effects of granting this Motion. It places burdens on the State, the victim, the witnesses, and this Court. However, when balanced against the constitutional right of Defendant to a fair and impartial decision by a jury of his peers, those burdens must be borne. Ultimately, I must decide if the trial was fair and the was verdict just. In, my opinion, they were not. Therefore, based on the foregoing, I hereby vacate the conviction and order a new trial.

Defendant's Motion for a New Trial is **GRANTED**.

**IT IS SO ORDERED**.

<u>/s/ Craig A. Karsnitz</u>

cc:   Prothonotary